748 F.2d 879
 The CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF MARYLAND, Appellee,
v.
PUBLIC SERVICE COMMISSION OF MARYLAND, Frank O. Heintz,
Chairman, William A. Badger, Commissioner, Lilo K. Schifter,
Commissioner, Wayne B. Hamilton, Commissioner, Haskell N.
Arnold, Commissioner, Appellants,
and
Ronald Hawkins, Executive Director and Maryland Office of
People's Counsel, Defendants.
Federal Communications Commission, Amicus Curiae.
 No. 83-1403.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 9, 1983.
Decided Nov. 20, 1984.
 
 Kirk J. Emge, Gen. Counsel for the Public Service Comm'n of Maryland, Baltimore, Md. (Sandra L. Hall, Asst. Gen. Counsel, Baltimore, Md., on brief), for appellants.
 D. Michael Stroud, Washington, D.C. (Robert A. Levetown and Mark J. Mathis, David H. Lloyd, John A. Siliciano, Daniel I. Prywes, Arnold & Porter, Washington, D.C., J. William Sarver, Baltimore, Md., on brief), for appellee.
 Before RUSSELL and MURNAGHAN, Circuit Judges, and MICHAEL,* District Judge.
 PER CURIAM:
 
 
 1
 This is an appeal from an Order of the District Court granting a preliminary injunction requiring the Public Service Commission of Maryland (PSC) and its officials to comply with a Federal Communications Commission (FCC) Preemption Order dated January 6, 1983. 560 F.Supp. 844. Jurisdiction for this appeal is provided for in 28 U.S.C. Sec. 1292(a)(1) (1982).
 
 
 2
 PSC argues on appeal that the District Court had no jurisdiction to grant the preliminary injunction, or alternatively that the District Court abused its discretion in granting the preliminary injunction. Prior to addressing those arguments, it is important to discuss briefly the FCC Preemption Order underlying this appeal.
 
 
 3
 The Preemption Order prescribed depreciation rates and depreciation methods for certain equipment used by telephone companies. The FCC initially indicated that the Preemption Order did not affect the authority of state utility commissions insofar as intrastate communications service was concerned. 89 F.C.C.2d 1094, 1108 (1982). Subsequently, the FCC reversed its position, stating that the Preemption Order completely preempted the authority of state utility commissions to regulate depreciation rates and methods for the specified telephone equipment. C.C. Docket No. 79-105, F.C.C. No. 82-581, slip op. (Jan. 6, 1983).
 
 
 4
 Notwithstanding the FCC's position regarding the Preemption Order, PSC concluded that the FCC-prescribed rates and methods would be inappropriate in establishing intrastate depreciation rates. As a result, PSC decided not to comply with the Preemption Order in establishing depreciation rates sought by the Chesapeake and Potomac Telephone Company of Maryland (C & P).
 
 
 5
 In response to PSC's decision, C & P brought an action to force PSC to comply with the Preemption Order. As a part of that action, C & P obtained the preliminary injunction at issue here. The preliminary injunction required PSC and its officials to comply with the Preemption Order in establishing both interstate and intrastate depreciation rates and methods. The District Court granted the preliminary injunction until the resolution of Virginia State Corporation Commission v. FCC, 737 F.2d 388 (4th Cir.1984), an action then pending concerning the validity and effect of the Preemption Order. Although PSC immediately appealed the District Court's decision, we reserved judgment on PSC's appeal until resolution of Virginia State Corporation Commission v. FCC, due to the relationship between the two cases.
 
 
 6
 We subsequently ruled in Virginia State Corporation Commission v. FCC, that the Preemption Order was a valid and complete preemption of state regulation regarding interstate and intrastate depreciation rates and methods for the specified telephone equipment. Based on our ruling in that case, we now address PSC's appeal of the District Court's decision granting the preliminary injunction. PSC's appeal consists of two arguments which are considered separately below.
 
 I.
 
 7
 PSC's first argument is that the District Court lacked jurisdiction under 47 U.S.C. Sec. 401(b) to grant the preliminary injunction. That provision states:
 
 
 8
 If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission or any party injured thereby, or the United States, by its Attorney General, may apply to the appropriate district court of the United States for the enforcement of such order. If, after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person or the officers, agents, or representatives of such person, from further disobedience of such order, or to enjoin upon it or them obedience to the same.
 
 
 9
 47 U.S.C. Sec. 401(b) (1948). There are four points to PSC's argument that the District Court lacked jurisdiction under Section 401(b).
 
 
 10
 First, PSC argues that the District Court lacked jurisdiction under Section 401(b) because PSC is not a "person" with the meaning of that section. This point is without merit because C & P's suit for preliminary injunction named not only PSC but also the officials comprising PSC as defendants. Thus, even if PSC is not a "person" within the meaning of Section 401(b), PSC's officials are expressly covered by that section.
 
 
 11
 Moreover, we believe that PSC must be considered a "person" within the meaning of Section 401(b). A contrary interpretation would undermine the Federal Communications Act by rendering PSC and other communications "entities" immune from enforcement actions by the FCC under Section 401(b). Therefore, we conclude that PSC's first point does not support its argument that the District Court lacked jurisdiction in this case.
 
 
 12
 Second, PSC argues that Section 401(b) did not provide the District Court with jurisdiction because the Preemption Order is not an "order" within the meaning of that section. Section 401(b) expressly covers only violations of FCC "orders". Relying on the distinction between administrative orders and rules stated in CBS v. United States, 316 U.S. 407, 418, 62 S.Ct. 1194, 1200, 86 L.Ed. 1563 (1942), PSC asserts that the Preemption Order is merely an administrative rule, and therefore outside the scope of Section 401(b).
 
 
 13
 Although PSC correctly cites CBS v. United States for the proposition that administrative orders and rules are distinguishable, we find that the Preemption Order is an "order" within the meaning of Section 401(b). Indeed, our ruling here is dictated by our analysis of the same Preemption Order in Virginia State Corporation Commission v. FCC, 737 F.2d 388 (4th Cir.1984).
 
 
 14
 As noted above, in Virginia State Corporation Commission v. FCC, we ruled that the Preemption Order was a valid and complete preemption of state regulation concerning depreciation rates and methods for the specified telephone equipment. That opinion did not explicitly state our jurisdictional basis for reviewing the Preemption Order. Nevertheless, our jurisdiction in that case clearly came from 47 U.S.C. Sec. 402 (1982) because that section is the exclusive means by which this court can review orders such as the Preemption Order. Although CBS v. United States construed Section 402 to cover certain administrative rules and regulations, the express language of Section 402 only provides for review of FCC "orders". Since CBS v. United States was not discussed or mentioned in Virginia State Corporation Commission v. FCC, it is clear that our review of the Preemption Order in that case was based on the express language of Section 402. Thus, our analysis in Virginia State Corporation Commission v. FCC included an implicit ruling that the Preemption Order was an order, not a rule or regulation.
 
 
 15
 That implicit ruling dictates our ruling in the present case that the Preemption Order was an "order" within the meaning of Section 401(b). Contra New England Telephone & Telegraph Co. v. Public Utilities Commission of Maine, 742 F.2d 1 (1st Cir.1984). Thus, Section 401(b) did provide the District Court with jurisdiction to grant a preliminary injunction concerning the Preemption Order. As a result, we conclude that PSC's second point provides no support for its argument that the District Court lacked jurisdiction in this case.
 
 
 16
 Third, PSC argues that Section 401(b) did not provide the District Court with jurisdiction because that section cannot be construed as creating an implied private cause of action to enforce an FCC ruling. Obviously, this point is based on the assumption that the District Court did not have jurisdiction under Section 401(b) because the Preemption Order was not an "order" within the meaning of Section 401(b). Given our above ruling to the contrary, we conclude that PSC's third point is without merit.
 
 
 17
 Finally, PSC argues that the Johnson Act, 28 U.S.C. Sec. 1342, is a bar to preliminary injunctions such as the one at issue here. The Johnson Act states that:
 
 
 18
 The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
 
 
 19
 (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
 
 
 20
 (2) The order does not interfere with interstate commerce; and,
 
 
 21
 (3) The order has been made after reasonable notice and hearing; and,
 
 
 22
 (4) A plain, speedy and efficient remedy may be had in the courts of such State.
 
 
 23
 28 U.S.C. Sec. 1342 (1942).
 
 
 24
 Although PSC argues that the Johnson Act is applicable to this case, we note that all the prerequisites for application of the Act were not satisfied here. The District Court's jurisdiction in granting the preliminary injunction was based on 47 U.S.C. Sec. 401(b). As such, Section 1342(1) of the Johnson Act was not satisfied. Since the four prerequisites of the Johnson Act are conjunctive, PSC's failure to demonstrate that Section 1342(1) was met here renders the Johnson Act inapposite to the preliminary injunction in this case. Therefore, PSC's fourth point does not support its argument that the District Court lacked jurisdiction to grant the preliminary injunction.
 
 
 25
 In sum, there is no support for PSC's first argument. As a result, we rule that the District Court had jurisdiction under 47 U.S.C. Sec. 401(b) to grant the preliminary injunction at issue here.
 
 II.
 
 26
 Given our ruling that the District Court had jurisdiction to grant the preliminary injunction, we must address PSC's second argument--that the District Court abused its discretion in granting the preliminary injunction.
 
 
 27
 In considering whether to grant the preliminary injunction, the District Court applied the standard articulated in Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir.1977). Accordingly, the District Court examined:
 
 
 28
 1. The likelihood that C & P would be irreparably harmed if the preliminary injunction were not granted;
 
 
 29
 2. The likelihood that C & P's customers would be irreparably harmed if the preliminary injunction were granted;
 
 
 30
 3. The likelihood that C & P would prevail on the merits of its action to force PSC to comply with the Preemption Order; and,
 
 
 31
 4. Whether the public interest would better be served by granting or denying the preliminary injunction.
 
 
 32
 PSC argues that the District Court's conclusion regarding each of the above factors was flawed in some way, and thus the District Court abused its discretion in granting the preliminary injunction.
 
 
 33
 First, PSC asserts that the District Court erroneously concluded that C & P would suffer irreparable harm if the preliminary injunction were not granted. PSC does not contest the District Court's finding that not granting the preliminary injunction would cost C & P approximately $44,000 per day in lost revenues (i.e., revenues C & P would be receiving if PSC complied with the FCC-prescribed depreciation rates for intrastate ratemaking). However, PSC argues that C & P's loss would not have been irreparable because the District Court could have fashioned an equitable remedy to compensate C & P in the event that C & P prevailed on the merits.
 
 
 34
 We believe that the District Court correctly found that C & P's loss would have been irreparable. Maryland law provides no statutory device for recovering such a loss, and as PSC concedes, the loss could not have been offset by charging higher rates in the future. Public Service Commission v. Baltimore Gas & Electric Co., 40 Md.App. 490, 393 A.2d 193 (1978); Chesapeake & Potomac Telephone Co. of Maryland, 32 Pub.Util.Rep.3d (PUR) 470, 475 (Md. PSC 1960). Although PSC proposes a court-made equitable remedy, we note that there is no authority cited supporting that proposition nor has this court found any such authority. Since ratemaking in Maryland is reserved for the legislature, Public Service Commission v. Baltimore Gas & Electric Co., 273 Md. 357, 329 A.2d 691, 694 (1974), we conclude that PSC's proposition is without merit. As such, we agree with the District Court that C & P would have suffered a substantial irreparable loss if the preliminary injunction had not been granted.
 
 
 35
 Second, PSC asserts that the District Court underestimated the harm to C & P's customers if the preliminary injunction were granted. PSC suggests that the preliminary injunction would force some customers to terminate their telephone service, but we do not believe such a result was likely. As noted by the District Court, the preliminary injunction resulted in an effective rate increase of one cent per day to C & P's customers. Furthermore, the rate increase was subject to a refund plus interest from C & P in the event that C & P lost on the merits of its case against PSC. Given the small amount of the rate increase and the promised refund by C & P, we rule that the District Court correctly concluded that the loss to C & P's customers was not irreparable and was far outweighed by the substantial and irreparable loss to C & P if the preliminary injunction were not granted.
 
 
 36
 Third, PSC argues that the District Court incorrectly concluded that C & P was likely to prevail on the merits of its case against PSC. Obviously, the fact that the District Court correctly predicted the result in Virginia State Corporation Commission v. FCC seriously undercuts PSC's argument. In addition, however, we believe that the District Court had ample justification when it granted the preliminary injunction to conclude that C & P was likely to succeed on the merits. At that time, among courts which had considered the same issues as in this case, the majority position favored C & P's success on the merits. Pacific Northwest Bell Telephone Co. v. Washington Utilities & Transportation Commission, 565 F.Supp. 17 (W.D.Wash.1983), appeal docketed No. 83-3746 (9th Cir. April 7, 1984). South Central Bell Telephone Co. v. Louisiana Public Service Commission, 570 F.Supp. 227 (M.D.La.1983), aff'd, 744 F.2d 1107 (5th Cir.1984); Southwestern Bell Telephone Co. v. State Corporation Commission of Kansas, No. 83-4125 (D.Kan. May 16, 1983), appeal docketed, No. 84-2296 (10th Cir. Sept. 13, 1984). Contra, New England Telephone & Telegraph Co. v. Public Utility Commission of Maine, 565 F.Supp. 949 (D.Me.1983), aff'd 742 F.2d 1 (1st Cir.1984). Consequently, we believe that the District Court did not err in concluding that C & P was likely to prevail on the merits.
 
 
 37
 Finally, PSC asserts that the District Court erred in finding that the public interest would better be served by granting the preliminary injunction. Even if we agreed with PSC's assertion, where the first three Blackwelder factors favor granting a preliminary injunction, issuance of the preliminary injunction is proper, notwithstanding a finding that the public interest would better be served by not granting the preliminary injunction. Id. at 196. Nevertheless, we believe the District Court correctly found that the public interest would better be served by granting the preliminary injunction. As noted by the District Court, the FCC operates under a Congressional mandate "to make available ... to all the people of the United States a rapid, efficient, Nationwide, and world-wide ... communications service with adequate facilities at reasonable charges ..." 47 U.S.C. Sec. 151 (1937). Since the FCC issued the Preemption Order in an effort to accomplish its Congressional mandate, we do not believe that the District Court erred in concluding that temporarily enforcing the Preemption Order would better serve the public interest. Thus, we dismiss PSC's final argument in support of its position that the District Court abused its discretion in granting the preliminary injunction.
 
 
 38
 In conclusion, we rule that there is no support for PSC's position that the District Court abused its discretion in granting the preliminary injunction. Given our ruling that the District Court had jurisdiction under 47 U.S.C. Sec. 401(b) to grant the preliminary injunction, we hold that the District Court's decision must be
 
 
 39
 AFFIRMED.
 
 
 
 *
 Hon. James H. Michael, Jr., United States District Judge for the Western District of Virginia, sitting by designation