913 F.2d 305
 ALLTEL TENNESSEE, INC.; Crockett Telephone Company;
Ooltewah-Collegedale Telephone Company; Peoples
Telephone Company; West Tennessee
Telephone Company, Plaintiffs-Appellants,
v.
TENNESSEE PUBLIC SERVICE COMMISSION; Keith Bissell,
Chairman; Frank Cochran, Commissioner; Steve
Hewlett, Commissioner, Defendants-Appellees.
 No. 89-5832.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 3, 1990.
Decided Sept. 10, 1990.
 
 W.J. Michael Cody, Burch, Porter & Johnson, Memphis, Tenn., T.G. Pappas, Bass, Berry & Sims, Nashville, Tenn., Hermann Ivester (argued), Valerie F. Boyce, H. Edward Skinner, Ivester, Henry, Skinner & Camp, Little Rock, Ark., for plaintiffs-appellants.
 Henry M. Walker (argued), Tennessee Public Service Com'n, Nashville, Tenn., for defendants-appellees.
 Before MARTIN and BOGGS, Circuit Judges; and HACKETT, District Judge.*
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Five small Tennessee telephone companies appeal the dismissal of their complaint alleging that the Tennessee Public Service Commission violated an order of the Federal Communications Commission by the issuance of an order adopting a "residual methodology" as the basis for setting intrastate telephone rates. The district court dismissed the complaint on both jurisdictional and abstention grounds. Because subject matter jurisdiction existed and abstention was improper, we reverse. However, because the case was not ready for a judicial determination, we remand with directions to dismiss the case without prejudice so that the FCC may determine whether the Tennessee Commission's use of residual methodology violates federal law.
 
 
 2
 The plaintiff telephone companies provide local, or intrastate, telephone service under the regulatory jurisdiction of the Tennessee Public Service Commission and interstate service under the jurisdiction of the Federal Communications Commission. For ratemaking purposes, the companies are required to allocate their operating costs between the intrastate and interstate portions of their business.
 
 
 3
 Under FCC rules, the companies have the option of allocating costs for their interstate service either on a true cost basis or by averaging their cost schedules. Companies electing the cost basis method perform company-specific cost separation studies, pursuant to 47 C.F.R. part 36. These regulations outline the procedure to separate expenses, taxes and plant use between interstate and intrastate service. Telephone companies choosing the average schedule method estimate their costs using "an 'average schedule' which adopts generalized industry data to reflect the costs of a hypothetical exchange company." N.A.R.U.C. v. FCC, 737 F.2d 1095, 1127 (D.C.Cir.1984).
 
 
 4
 The telephone companies in this case all use the average schedule method to determine their interstate costs. The present dispute arises because the companies requested that the Tennessee Commission allow them to use the cost basis method under 47 C.F.R. part 36 to determine their intrastate costs. Following an adjudicatory hearing, the Tennessee Commission rejected the telephone companies' argument and held that the method used to allocate costs for federal ratemaking purposes must also be followed for state rate proceedings. Thus, intrastate and interstate costs must both be calculated on a true cost basis or must both be averaged, rather than using one method to assess intrastate costs and the other to assess interstate costs. The Tennessee Commission further held that it would continue to follow the residual method of calculating the companies' intrastate costs. Under this method, the Tennessee Commission deducts from each company's total costs those expenses which have been allocated to interstate jurisdiction. The remainder, the "residual", are the company's intrastate costs. This method is used by virtually every state commission in the country to fix rates for local telephone companies.
 
 
 5
 Alleging that 47 C.F.R. part 36 is a set of FCC rules that preempts state use of the residual approach, the telephone companies filed suit in the district court in Nashville on April 5, 1989, challenging the Tennessee Commission's decision and seeking declaratory and injunctive relief. The district court dismissed the suit on both jurisdictional and abstention grounds. The court denied jurisdiction under 47 U.S.C. Sec. 401(b) based on its finding that the use of the residual methodology of cost determination does not offend the separations order of the FCC adopting 47 C.F.R. part 36. The district court also determined that it was without jurisdiction under 28 U.S.C. Sec. 1331 and Sec. 1337, relying on its ruling in Federal Express Corp. v. Tennessee Pub. Serv. Comm'n, 693 F.Supp. 598 (M.D.Tenn.1988), rev'd, 878 F.2d 381 (6th Cir.1989) (per curiam) (amending original opinion). The district court also stated that if it erred in its jurisdictional rulings, abstention was warranted under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The district court found that abstention was appropriate because there was a parallel Tennessee state procedure that was ongoing, there was a compelling state interest in establishing fair phone rates, and there was a fair opportunity for the federal claims to be raised in the proceedings before the Tennessee Public Service Commission.
 
 
 6
 The question of subject matter jurisdiction under 28 U.S.C. Secs. 1331 and 1337 is no longer at issue as a result of our decision reversing the district court in Federal Express. At issue in Federal Express was the identical question that is raised here--whether a federal court has subject matter jurisdiction when a party seeks declaratory and injunctive relief from state regulation on the ground that such regulation is preempted by a federal statute. The district court determined that it lacked subject matter jurisdiction in Federal Express, and relied on that decision in this case. Relying on CSXT, Inc. v. Pitz, 883 F.2d 468 (6th Cir.1989), we reversed the district court's decision in Federal Express, finding that the district court, in fact, had jurisdiction. Thus, it is established that subject matter jurisdiction in this case exists under 28 U.S.C. Secs. 1331 and 1337.
 
 
 7
 We are next faced in this case with the additional question of whether subject matter jurisdiction exists under the Federal Communications Commission Statute, 47 U.S.C. Sec. 401(b). A suit brought under Sec. 401(b) is an action to enforce an order of the FCC. The telephone companies allege that failing to apply their cost studies under 47 C.F.R. part 36 is directly contrary to the FCC's separations order adopting that regulation and, therefore, creates a cause of action under 47 U.S.C. Sec. 401(b). The district court stated that it lacked jurisdiction under Sec. 401(b) because in determining intrastate costs "the use of residual methodology does not offend the order of the FCC." This reasoning was erroneous because the district court made the ultimate decision on the merits a prerequisite to deciding whether it had Sec. 401(b) jurisdiction.
 
 
 8
 A separations order is the term used by the FCC to distinguish between interstate and intrastate value of equipment, costs and expenses. The separations order at issue here resulted from a rulemaking proceeding before the FCC. There is some disagreement among the circuits as to whether an order resulting from an FCC rulemaking proceeding, as opposed to an adjudicatory proceeding, is an "order" within the meaning of Sec. 401(b). The First Circuit has ruled that an order resulting from a rulemaking proceeding is not an order under Sec. 401(b). New England Tel. & Tel. Co. v. Public Utils. Comm'n of Maine, 742 F.2d 1, 4-7 (1st Cir.1984), cert. denied, 476 U.S. 1174, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986). Each of the other circuits that has addressed this issue, however, has either implicitly or expressly found that such an order may be an order under Sec. 401(b). Hawaiian Tel. Co. v. Public Utils. Comm'n, 827 F.2d 1264, 1270-72 (9th Cir.1987), cert. denied, 487 U.S. 1218, 108 S.Ct. 2870, 101 L.Ed.2d 906 (1988); Chesapeake & Potomac Tel. Co. v. Public Serv. Comm'n, 748 F.2d 879, 880-81 (4th Cir.1984), vacated and remanded for proceedings consistent with Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986), 476 U.S. 445, 106 S.Ct. 2239, 90 L.Ed.2d 444 (1986); South Central Bell Tel. Co. v. Louisiana Pub. Serv. Comm'n, 744 F.2d 1107, 1115 (5th Cir.1984), vacated and remanded for consideration in light of Chesapeake & Potomac, supra, 476 U.S. 1166, 106 S.Ct. 2884, 90 L.Ed.2d 972 (1986); Illinois Bell Tel. Co. v. Illinois Commerce Comm'n, 740 F.2d 566, 571 (7th Cir.1984); Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n, 738 F.2d 901 (8th Cir.1984), vacated and remanded for consideration in light of Chesapeake & Potomac, supra, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 973 (1986).
 
 
 9
 We join the majority and agree that an order resulting from a rulemaking proceeding can be an order for purposes of Sec. 401(b). We are especially persuaded by the Ninth Circuit's reasoning in Hawaiian Tel. Co. v. Public Utils. Comm'n, 827 F.2d at 1271-72. Congress, rather than attempting to limit Sec. 401(b) exclusively to adjudicatory orders, intended that a broad range of orders be reviewable under Sec. 401(b). Because the separations order in this case mandates specific action as to the division of costs to be taken by the telephone companies and the regulatory agencies, we find that the separations order is a reviewable and enforceable order under Sec. 401(b).
 
 
 10
 The telephone companies, therefore, properly sought enforcement of the separations order by injunction pursuant to Sec. 401(b). The district court, by tying its jurisdiction to a prior demonstration of a violation of the order, erred in holding that it lacked jurisdiction under Sec. 401(b). Accordingly, we conclude that the district court had subject matter jurisdiction in this case under 47 U.S.C. Sec. 401(b), as well as under 28 U.S.C. Secs. 1331 and 1337. See Mid-Plains Tel. Co. v. Public Serv. Comm'n, No. 89-C-318-S (W.D.Wisc. July 26, 1989) (in a case dealing with virtually the same facts and issues as this case, the court, contrary to the district court in the present case, held that it had jurisdiction under 28 U.S.C. Secs. 1331, 1337(a), 1343(a)(3) and 47 U.S.C. Sec. 401(b)).
 
 
 11
 The district court here ruled that even if it had subject matter jurisdiction, it would abstain from exercising its jurisdiction pursuant to the abstention doctrine of Younger v. Harris. Abstention is appropriate under Younger only when there is an ongoing state administrative proceeding that is judicial in nature. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). The United States Supreme Court recently rejected the application of Younger in New Orleans Public Service, Inc. v. Council of City of New Orleans, --- U.S. ----, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), another case where a utility claimed that federal law preempted certain state actions in setting rates. The Court stated that whether an agency's proceeding is judicial or legislative depends upon the "nature of the final act" which the proceeding is intended to produce. New Orleans Pub. Serv., --- U.S. at ----, 109 S.Ct. at 2519, 105 L.Ed.2d at 319 (quoting Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226-27, 29 S.Ct. 67, 69-70, 53 L.Ed. 150 (1908) (Holmes, J.)). The Court concluded that "ratemaking is an essentially legislative act" and that the suit, as a challenge to completed legislative action, did not represent "the interference with ongoing judicial proceedings against which Younger was directed." Id., --- U.S. at ----, 109 S.Ct. at 2520, 105 L.Ed.2d at 319-20.
 
 
 12
 In Mid-Plains Telephone, the district court in Wisconsin held that New Orleans Public Service controlled the issue of Younger abstention and precluded abstention from the claims brought under 47 U.S.C. Sec. 401(b). See Mid-Plains Tel. Co., supra. We agree. The Tennessee Commission's proceedings were sufficiently concerned with ratemaking to make them legislative in nature. In addition, it is clear that the underlying reason for Younger abstention, federal comity, is absent in this case. There is no purely separate function of the state in the separations process at issue here. The actions of the state are necessarily intertwined with federal actions because the FCC has final authority to prescribe uniform cost separations procedures for both intrastate and interstate telephone service. The express grant of jurisdiction under Sec. 401(b) indicates the intent of Congress for federal courts to resolve these issues.
 
 
 13
 Although we conclude that the district court had subject matter jurisdiction and that abstention was improper, we believe that this matter is not yet ripe for adjudication. Under the doctrine of primary jurisdiction, questions within the special competency of an administrative agency should be resolved by that agency. In re Long Distance Telecommunications Litigation, 831 F.2d 627, 631 (6th Cir.1987). The principal reasons for the doctrine of primary jurisdiction are to obtain the benefit of the expertise and experience of the administrative agencies and the desirable uniformity which occurs when a specialized agency decides certain administrative questions. Id. at 630 (quoting United States v. Western Pacific, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956) (Harlan, J.)). A court must apply the doctrine of primary jurisdiction on a case-by-case basis, deferring to an administrative agency only when the reasons for the existence of the doctrine are present. Id.
 
 
 14
 The FCC has final authority for prescribing the regulations which control the separation of costs between intrastate and interstate telephone services. The ultimate issue in this case, whether the Tennessee Public Service Commission has violated an FCC order by refusing to apply 47 C.F.R. part 36 to average schedule telephone companies, is a question that is certainly central to the FCC's separations procedures. The resolution of this issue will affect a large number of telephone companies. Thus, both reasons for invoking the doctrine of primary jurisdiction, the need for agency expertise and for uniformity of decisions, are present in this case.
 
 
 15
 The district court in Mid-Plains Telephone also applied the doctrine of primary jurisdiction to allow the FCC to address the issue, and, as a result of that decision, the Mid-Plains Telephone Company has formally requested an FCC ruling on this controversy pursuant to 47 C.F.R. Sec. 1.2. See Mid-Plains Tel. Co., supra. We, therefore, conclude that on remand the district court should rule that the doctrine of primary jurisdiction is applicable here and await the decision of the FCC on this matter.
 
 
 16
 The judgment of the district court is reversed.
 
 
 
 *
 The Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation