

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-22-1996

# Mallenbaum v. Adelphia Comm. Corp.

Precedential or Non-Precedential:

Docket 95-1085

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"Mallenbaum v. Adelphia Comm. Corp." (1996). *1996 Decisions.* Paper 251.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/251

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 95-1085
_____

AMY MALLENBAUM; DAVID MALLENBAUM,
individually and on behalf of all
others similarly situated

v.

ADELPHIA COMMUNICATIONS CORPORATION

<u>David Mallenbaum and Amy Mallenbaum,</u>
<u>Appellants</u>

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 93-cv-07027)

_____

Argued: September 21, 1995

Before: BECKER, GREENBERG, <u>Circuit Judges</u>, and
LANCASTER,[1] <u>District Judge</u>.

(Filed:  January 22, 1996)


MICHAEL R. NEEDLE, ESQUIRE (ARGUED)
Michael R. Needle, P.C.
Suite IC-44
2401 Pennsylvania Ave.
Philadelphia, PA  19130

LAWRENCE E. FELDMAN, ESQUIRE
Law Offices of Lawrence E. Feldman
7827 Old York Road
The Manor Professional Building
Elkins Park, PA  19117

DAVID B. ZLOTNICK, ESQUIRE
Zlotnick & Thomas

_____

[1]Honorable Gary L. Lancaster, United States District Judge for
the Western District of Pennsylvania, sitting by designation.


1

1039 North Sixth Avenue
Tucson, AZ  85705

Attorneys for Appellants and the Class


GEOFFREY D.C. BEST, ESQUIRE (ARGUED)
SARA C. KAY, ESQUIRE
LeBoeuf, Lamb, Greene and MacRae, L.L.P.
125 West 55th Street
New York, New York  10019

RANDALL D. FISHER, ESQUIRE
LESLIE BROWN, ESQUIRE
Adelphia Communications Corp.
5 West Third Street
Coudersport, PA  16915

STEPHEN W. ARMSTRONG, ESQUIRE
Montgomery, McCracken, Walker & Rhoads
Three Parkway, 20th Floor
Philadelphia, PA  19102

Attorneys for Appellee

_____

OPINION OF THE COURT
_____

BECKER, Circuit Judge.

Plaintiffs Amy and David Mallenbaum, on behalf of themselves and others similarly

situated, sued defendant Adelphia Communications Corporation ("Adelphia") in distri

court challenging its monthly fee to cable subscribers who receive programming on m

than one television set.  Plaintiffs claim that this fee is an impermissible equipm

charge under Title VI of the 1992 Cable Act ("Cable Act" or "Act"), 47 U.S.C. §§ 52

and a regulation promulgated thereunder, 47 C.F.R. § 76.923. That regulation requir

charges for multiple outlets be based on actual cost.  Plaintiffs advance their cha

by two different means.

Plaintiffs first assert an express right of action. Under 47 U.S.C. § 401

Federal Communications Commission ("FCC" or "Commission") "orders" may be directly

enforced by private parties in district court.  According to plaintiffs, §76.923 sh

construed as a direct "order" to cable operators giving rise to an express right of

action.  Plaintiffs also assert an implied right of action under Section 3 of the 1

Cable Act to contest the outlet charge.  The district court concluded that plaintif

neither an express nor an implied right of action.  It therefore dismissed the acti

failure to state a claim upon which relief could be granted.[2]

We hold that plaintiffs lack an express right of action under 401(b) beca

agency regulation is not a privately enforceable 401(b) order unless it requires th

defendant to take a particular action.  Section 76.923 does not require defendant A

to take any action with regard to additional outlet prices.  Moreover, plaintiffs c

have an implied right of action under the Cable Act because the Cort v. Ash, 422 U.

(1975), factors are not met.  We therefore affirm.  Inasmuch as we resolve the case

this fashion, we need not decide whether or not Adelphia's additional outlet fee is

---

[2]     Although the district court couched some of its discussion in terms of st
and, at one point, styled its dismissal as a judgment on the pleadings, fairly read
court actually dismissed the case under Rule 12(b)(6) for failure to state a claim
which relief can be granted.

3

on actual cost, for even if the charge was <u>not</u> based on actual cost, plaintiffs hav

cause to complain.

### I.    Facts

The 1992 Cable Act covers three types of cable television service:  basic

programming, and premium. Basic service includes all broadcast signals and all publ

educational, and government access channels carried by the system.  All cable subsc

must purchase basic service. Cable programming service is video programming provide

a cable system other than on a per-channel or per-program basis.[3] Premium service,

on a per-channel or per-program basis, includes movie channels (e.g., HBO or Cinema

cultural and sporting events (e.g., pay-per-view concerts or prize fights).

Basic service rates may be regulated by a local franchising authority acc

to regulations promulgated by the FCC if the authority certifies to the Commission

has the necessary authority and resources.  47 U.S.C. § 543(a)(2)-(3); 47 C.F.R. 76

Under 47 C.F.R. § 76.923, local franchising authorities that choose to regulate (th

not do so) must limit charges for multiple cable television receivers to actual cos

the local franchising authority does not file a certification with the FCC, basic s

rates remain unregulated.  If the FCC rejects or revokes franchising authority

certification, the FCC regulates basic service rates until the authority is certifi

recertified.  47 U.S.C. § 543(a)(4)-(6).  The FCC has sole authority to regulate ra

cable programming service.  47 U.S.C. § 543(a)(2).  Under the 1992 Cable Act, premi

rates are unregulated.

After passage of the 1992 Cable Act, Adelphia notified its customers that

would charge $.95 per month for each outlet (beyond the first) that received any

---

[3]     Cable programming service includes a bundle of several channels.  For ins
if basic service only offered channels such as CNN, C-SPAN, and MTV, cable programm
service might offer a package of additional channels such as ESPN, CNN Headline New
C-SPAN 2.

[4]     See <u>infra</u> note 6 and surrounding text.

4

combination of cable television services.  Plaintiffs, in their district court acti

argued that this charge violated the FCC regulation that limits rates for basic ser

multiple television outlets to actual cost.  47 C.F.R. § 76.923.  The Mallenbaum's

franchising authority, the Township of Upper Dublin (PA), has not applied for

certification to regulate these rates.  The plaintiffs assert, however, an express

implied right of action to enforce §76.923.

## II.       Discussion

### A.    Express Right of Action

Section 401(b) gives private individuals an express right to enforce FCC

"orders."  The statute provides:
> If any person fails or neglects to obey any <u>order</u> of the Commission other than
> for the payment of money, while the same is in effect, the Commission or any
> party injured thereby, or the United States, by its Attorney General, may appl
> to the appropriate district court of the United States for the enforcement of
> such order.  If, after hearing, the court determines that the order was
> regularly made and duly served, and that the person is in disobedience of the
> same, the court shall enforce obedience to such order by a writ of injunction
> other proper process, mandatory or otherwise, to restrain such person or the
> officers, agents, or representatives of such person, from disobedience of such
> order, or to enjoin upon it or them obedience to the same.

47 U.S.C. § 401(b) (emphasis added).  Thus, if the regulation regarding additional

charges, 47 C.F.R § 76.923, is an "order," plaintiffs would have the right to seek

enforcement in district court.

In determining whether an agency rule is an "order" under § 401(b), court

generally used <u>Columbia Broadcasting System, Inc. v. United States</u>, 316 U.S. 407, 4

(1942) [hereinafter "<u>CBS</u>"], as a starting point.  While <u>CBS</u> involved a different st

provision, 47 U.S.C. § 402(a),[5] that case set forth the principle that whether an a

regulation is an "order" depends on the nature of the rule and its impact on litiga

Specifically, an agency regulation should be considered an "order" if it requires a

defendant to take concrete actions.

---

[5]       47 U.S.C. § 402(a) sets forth the procedures to "enjoin, set aside, annul
suspend" any order of the Commission.

This principle led the Ninth Circuit to conclude in <u>Hawaiian Telephone C[o]</u>

<u>Public Utilities Commission</u>, 827 F.2d 1264 (9th Cir. 1987), that the FCC rule there[at]

issue should be deemed an "order" under § 401(b).  Because the rule in that case re[quired]

a particular action to be taken by the defendant (namely, that defendant Hawaii Pub[lic]

Utilities Commission follow certain procedures to separate costs and investments am[ong]

interstate and intrastate telephone services), the rule was "appropriately interpre[ted as]

an 'order'" enforceable by a private party against the defendant in district court.[ Id.]

at 1272.[6]

Conversely, the <u>CBS</u> principle led this Court to conclude in <u>PBW Stock Exc[hange],</u>

<u>Inc. v. SEC</u>, 485 F.2d 718, 732 (3d Cir. 1973), that the SEC rule in question was no[t]

enforceable under a provision of the Securities Exchange Act allowing judicial revi[ew of]

SEC "orders."  Noting that the rule at issue was more akin to a general rulemaking [than]

an order, in that it was prospective and unrelated to specific rights and obligatio[ns of]

the litigants, we concluded that federal jurisdiction was absent.  <u>Id</u>. at 732-733.

In the instant case, § 76.923 does not order defendant Adelphia (or other [cable]

companies like it) to charge specific rates.  Rather, given the statutory framework[, it is]

clear that this regulation is addressed not to cable operators but to local franchi[sing]

_____

[6]     Other circuits including the Sixth Circuit in <u>Alltel Tennessee, Inc. v.</u>
<u>Tennessee Public Service Commission</u>, 913 F.2d 305, 308 (6th Cir. 1990) and the Seve[nth]
Circuit in <u>Illinois Bell Telephone, Co. v. Illinois Commerce Commission</u>, 740 F.2d 5[  ]
(7th Cir. 1984) support the Ninth Circuit approach.  According to the First Circuit[,]
however, only orders that are judicial in nature afford plaintiffs a private right [of]
enforcement under §401(b).  This approach was enunciated by Judge Breyer in <u>New Eng[land]</u>
<u>Telephone and Telegraph Co. v. Public Utilities Commission</u>, 742 F.2d 1 (1st Cir. 19[84).]
That opinion relied on the Administrative Procedure Act ("APA") which defines "orde[r" as]
"a final disposition, whether affirmative, negative, injunctive, or declaratory in [form,]
of an agency in a matter other than rulemaking."  5 U.S.C. § 551(6).  Although the [APA was]
enacted after the 1934 Communications Act, the court used the APA as "a guide in
determining the proper construction of pre-existing, related procedural statutes--a[t least]
where other non-APA considerations also point clearly in the same direction."  <u>Id</u>[.]
For the First Circuit, these considerations were, <u>inter alia</u>, protecting agency aut[hority]
and maintaining a coherent communications policy.  We need not choose between the F[irst]
Circuit and Ninth Circuit approaches, for, even assuming <u>arguendo</u> that some rules m[ay be]
considered orders under § 401(b), the FCC rule at issue here may not.

6

authorities.  <u>See</u> 47 U.S.C. 543(a)(2)-(3), (6).[7] Thus, while § 76.923 offers guidel

be followed by local franchising authorities that decide to regulate a cable compar

fees for additional outlets, it does not in itself require particular actions to be

by defendant Adelphia.  Therefore, following the principle enunciated in <u>CBS</u> and it

progeny, §76.923 is not an "order" under § 401(b).

Furthermore, as we have noted, the Mallenbaums' local franchising authori

not applied for certification.  Thus, under the 1992 Cable Act, Adelphia's rates fo

additional outlets remain unregulated.  <u>See</u> <u>supra</u> note 6.  As § 76.923 is inapplica

---

[7]      Section 76.923 is referenced by § 76.922, which in turn refers back to th
language of 47 U.S.C. § 543.  That section provides:

> (2) <u>Preference for competition</u>. . . . If the Commission finds that a
> cable system is not subject to effective competition--
>
> (A) <u>the rates for the provision of basic cable service shall be</u>
> <u>subject to regulation by a franchising authority, or by the Commission</u>
> if the Commission exercises jurisdiction pursuant to paragraph (6), <u>in</u>
> <u>accordance with the regulations prescribed by the Commission under</u>
> <u>subsection (b) of this section</u> . . .
>
> . . . .
>
> (3)  <u>Qualification of franchising authority</u>. A franchising authority
> that seeks to exercise regulatory jurisdiction permitted under
> paragraph (2)(A) shall file with the Commission a written
> certification . . . .
>
> . . . .
>
> (6)  <u>Exercise of jurisdiction by Commission</u>. If the Commission
> disapproves a franchising
> authority's certification . . . or revokes such authority's
> jurisdiction . . . the Commission shall exercise the franchising
> authority's regulatory jurisdiction under paragraph (2)(A) until the
> franchising authority has qualified to exercise that jurisdiction by
> filing a new certification that meets the requirements of paragraph
> (3).

47 U.S.C. 543(a)(2)-(3), (6) (emphasis added in paragraph 2(A)). Thus, under § 543,
franchising authority or (in particular circumstances) the Commission may regulate
accordance with the provisions set forth in § 76.923.

Adelphia, plaintiffs have failed to state a claim.  For these reasons, plaintiffs h

express right of action.

     B.    Implied Right of Action

We hold further that plaintiffs have no implied right of action under the

In making this determination we use the four factor test set out in Cort v. Ash, 42

66 (1975). These factors are:

> (1) whether plaintiff is a member of the class "for whose especial benefit the statute was enacted";
>
> (2) whether there is evidence of legislative intent to create or preclude relief sought;
>
> (3) whether the relief sought is consistent with the legislative scheme;
>
> (4) whether the relief sought is the type that is "traditionally relegate states, such that federal relief would interfere with the state scheme.

Id. at 78.  Recent case law makes clear that the focus of our inquiry should be on

first two factors.  See, e.g., Touche Ross & Co. v. Redington, 442 U.S. 560, 575-76

(1979); American Tel. & Tel. Co. v. M/V Cape Fear and M/V Little Gull, 967 F.2d 864

(3d Cir. 1992).  It is clear that the Cable Act was not created for the especial be

of the plaintiffs.  Subscribers residing in areas where no local franchising author

sought FCC licensing are not intended to benefit from the 1992 Act, since rates in

municipalities are not regulated.  As to the second factor, Congress surely did not

to give plaintiffs a private right of action to enforce the regulations.  Rather, i

situations like this, Congress intended for rates to remain unregulated.  Since the

two Cort factors do not support the finding of an implied right, plaintiffs do not

implied right of action under the Cable Act to enforce § 76.923.

The order of the district court will be affirmed.

8